## STATE vs. ALBERT TRUSTY.

*Manslaughter—Res gestæ—Dying Declaration—Admissions of Defendant—Evidence.*

1. Statements made by the deceased about five minutes after the occurrence, and not in the presence of the defendant, are not admissible.

2. When the decedent had declared that she was going to die, and within thirteen minutes another declaration was made by her that she was about to die, a statement made by her between the two declarations is admissible as a dying declaration. The rule as to the admissibility of dying declarations is clearly stated in *Section 158 of 1 Greenleaf on Evidence*, and the rule governing the weight of dying declarations is well expressed in Section 162.

3. The statements or admissions of the defendant may be proved if there is nothing to show any threat or any inducement of reward of any kind. The case of *Bran vs. U. S., 168 U. S., 532*, is an exceptional one, but it recognizes the general rule that to exclude the statements or admissions it must be shown that they were made either under the influence of fear of punishment or of the hope of reward.

4. Manslaughter—voluntary and involuntary—defined.

5. A person when assaulted has a right to use so much force as is necessary to relieve or protect himself from the assault, but not to use

unreasonable or excessive force or violence. Mere words or gestures, however opprobrious, irritating and insulting they may be, will not justify an assault.

6. Reasonable doubt defined.

(*May 26, 1898.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*R. C. White*, Attorney-General, and *Peter L. Cooper, Jr.*, Deputy Attorney-General, for the State.

*Julian Walker*, for the defendant.

Court of Oyer and Terminer, New Castle County; No. 25 to May Term, 1898.

The prisoner was indicted for murder in the first degree, but at the trial the State asked for conviction of manslaughter only. The defendant was charged with causing the death of his paramour, Fannie Kelly, at No. 10 Lord street, in the City of Wilmington, Delaware, in the early morning of April 13, 1898, by pushing or throwing her over a lighted kerosene lamp, thereby setting fire to her clothing and causing injuries from which she died at 6 o'clock on the evening of the same day. The evidence tended to show that on the night in question the deceased had been out with two of her associates—one Martha Duckery and Lee Rooley—in company with whom she returned to her home some time after midnight; that Trusty, the defendant, was then upstairs in bed; that the deceased went upstairs to his room and began abusing him for spending money which she had given him for the purpose of buying her a pair of shoes; that she ordered him to leave the house, which he began to prepare to do, requesting her to get the lamp so that he could see to procure his clothing; that she then went down to the room below, where her said associates were, and, taking a lighted lamp, returned to Trusty's bedroom, where they again began quarreling, the deceased and Trusty being the only persons in the bedroom at the time; that soon thereafter those who were below heard a

noise as of a heavy body falling in the room above, and imme-
diately Fannie Kelly came rushing into the room with her cloth-
ing on fire: that the flames were soon extinguished and she was
sent to the Delaware Hospital, where she died later the same
day; that before the flames were extinguished Trusty came down
stairs and left the house, half dressed, going to a former board-
ing place in the said city, where he spent the remainder of the
night and the next day, until captured by the police. The
prisoner claimed that the lamp was on the floor near the landing
of the stairs; that the deceased was between him and the lamp,
and that in gently pushing her away from him, she, being intox-
icated, fell down the stairway over the lamp, which was over-
turned in the fall and which set fire to her clothing.

The witness Martha Duckery having testified that in
about five minutes after the flames were extinguished the de-
ceased made certain statements to her as to how the accident
occurred, was asked by the Deputy Attorney-General what those
statements were. Counsel for defendant objected on the ground
that it was too long after the main occurrence and was not co-
temporaneous with the facts and circumstances thereof, and not
in the presence of the defendant. The state contended that it
was a part of the *res gestæ*.

*Travellers' Ins. Co. vs. Mosely, 8 Wallace, 397; Common-
wealth vs. McPike, 3 Cushing, 182; People vs. Vernon, 35 Cal.,
49; Elkins, Bly & Co. vs. McKean, 79 Pa. St., 493; State vs.
Lambright, 16 Criminal Law Magazine, 484; State vs. Frazer, 1
Houston's Criminal Cases, 182.*

LORE, C. J :—Under the circumstances of this case, the
Court do not think this testimony is admissible.

The witness Harriet Johnson testified to the following con-
versation with the deceased shortly after the flames were extin-
guished, viz: "She said to me, 'Oh, Aunt Harriet, I'm going
to die; I'm going to die.' I said, 'No, I guess not Fannie; pray;'
and she said, 'Oh, Aunt Harriet, I can't pray.' "

The State then offered to prove certain statements made by the deceased (as dying declarations) explaining how the occurrence happened.

Objected to by counsel for defendant.    Objection overruled.

The witness then continued:

"I said, 'Fannie, how did this happen?' and she said, 'Bert throwed the lamp at my head and I dodged it and the lamp fell down the steps, and he shoved me down.'"

The witness Martha Duckery was recalled by the State to prove, as dying declarations, certain statements made by the deceased to the witness after the deceased had told Harriet Johnson that she was going to die.

Objected to by counsel for defendant.

LORE, C. J.:—The rule as to the admissibility of dying declarations is very clearly stated in *Section 158 of 1 Greenleaf on Evidence*. "It is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death; but it is not necessary that they should be stated, at the time to me so made. It is enough, if it satisfactorily appear in any mode, that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind."

Here is an offer of a statement as a dying declaration under these circumstances: the decedent had previously made the declaration to a witness, according to the testimony of that witness, that she was going to die, and reiterated it. Afterwards, according to the testimony we already have before us, within thirteen minutes she repeats to this witness the declaration previously made that she was going to die. Under those circumstances that would clearly bring this within the rule that admits it as a dying declaration. The ground I put it on is this: That a

declaration was made by the decedent to Mrs. Johnson that she was going to die, and within thirteen minutes another declaration was made, according to this witness, that she was about to die, and between those two declarations comes in this statement.

GRUBB, J. :—I concur with the Chief Justice. It is necessary for the State, before they can produce evidence which they evidently intend to attempt to produce, that they show that the declarations of Fannie Kelly were made when she was under the apprehension of impending death. It is, therefore, only necessary for you to show the circumstances which warrant us in believing that she was then under the apprehension of impending death. This witness, upon my question, has stated that at the time she heard Fannie Kelly make this declaration that Fannie was in great agony, having been on fire and that while she was in great agony resulting from her being on fire she declared that she was going to die. Under these circumstances, I concur with the Chief Justice that she is undoubtedly entitled to state what Fannie Kelly said under proof of her belief that her death was impending and imminent.

SPRUANCE, J., dissented on the ground that the witness had stated in reply to a question asked by him, that the alleged statements of the deceased were made by her before she said she was going to die.

The defendant's counsel excepted.

Walter Witsil, State Detective, was called to the stand by the State to prove certain admissions made by the defendant in the corridor of the prison in the City Hall shortly after his arrest and in the presence of several police officers. After testifying that there was nothing in the way of an inducement or reward held out to the prisoner nor threats made, the State asked the witness the following questions: "When you asked him how the woman came to her death and if he threw the lamp at her, what did he say?"

Objected to by counsel for defendant on the ground that the circumstances in the case—the defendant being in custody, in a

prison, and surrounded by the police officers—were enough to amount to an inducement.

*Bran vs. U. S., 168, U. S. 532.*

LORE, C. J :—We think that under the proof in this case, there is nothing to show any threat or any inducement of reward of any kind. The case of *Bran vs. U. S., 168, U. S. 532*, cited by the counsel for the defendant, is an exceptional one, but it recognizes the general rule that to exclude the statements or admissions it must be shown that they were made either under the influence of fear of punishment or of the hope of reward.

The objection is overruled.

The Court charged the jury upon the various propositions of law raised by the prayers of the respective counsel, as follows :

LORE, C. J :—Gentlemen of the jury : In this case, the State has relieved you from the necessity of passing upon the different degrees of homicide. For although the indictment is for murder of the first degree, the State asks for a verdict of manslaughter only. You, therefore, are to determine whether the prisoner, Albert Trusty, is guilty of manslaughter or not guilty.

Manslaughter is "the unlawful killing of another, without malice, either express or implied;" and is divided into two classes, *voluntary* and *involuntary*.

*Voluntary* manslaughter is where one kills another in the heat of blood, and this usually arises from fighting or from provocation.

*Involuntary* manslaughter is where one doing an *unlawful act* not felonious, nor tending to great bodily harm, or doing a *lawful act*, without proper caution, or requisite skill, undesignedly kills another.

In order to warrant a verdict for manslaughter, it is incumbent on the State to satisfy you beyond a reasonable doubt, that Fannie Kelly died from injuries received at the hands of Albert Trusty, in the manner set forth in the indictment, and that such injuries were unlawfully inflicted by Trusty.

If, from the testimony, you should be satisfied that her death resulted from injuries received from him, you must further find that such injuries were unlawfully inflicted before you may convict of the crime charged. The determination of this question involves the careful and conscientious consideration by you, of all the circumstances of the case as disclosed by the testimony.

Should you find that Fannie Kelly laid her hands upon, or made an assault upon Trusty and in warding off that assault, or in relieving himself from an attack made upon him by her, he merely pushed her away from him, using therein only such force as was reasonably necessary to effect that purpose, and that from such pushing Fannie fell or was knocked down stairs in her fall overturning the lamp, thus setting her clothes on fire, and thereby receiving the injuries from which she died, your verdict should be not guilty. For Trusty, in that case, had a right to use so much force as was necessary to relieve him from contact with her. Her death in that case would be the result of an accident arising from lawful causes.

On the other hand should you find that he wilfully or in the heat of passion used unreasonable or excessive force or violence, and therefrom she so fell and received the injuries from which she died, your verdict should be guilty; as such unreasonable or excessive force or violence was unlawful.

It is well settled, that mere words or gestures, however opprobrious, irritating and insulting they may be, will not justify an assault. Therefore, if you should find that, provoked by her words or gestures only, the prisoner pushed Fannie over the lamp, or threw the lamp at her, thereby causing the burns which resulted in her death, he would be guilty of manslaughter. In such case it would be immaterial, whether she was drunk or sober, or how profane the language may have been, as they alone would constitute no sufficient provocation in law to justify his act in so pushing her or throwing the lamp at her.

Every one is presumed to be innocent of crime until proved to be guilty. Therefore you should bear in mind the "rule of criminal law, that the guilt of the accused must be fully proved. The persuasion of guilt ought to amount to such moral certainty,

as to convince the minds of reasonable men beyond all reasonable doubt." (*3 Greenleaf's Evidence, Sec. 29*).

Should you entertain any such reasonable doubt, it should inure to the acquittal of the prisoner.

The rule governing the weight of dying declarations as evidence, upon which we have been asked to charge you, is well expressed in *Section 162, 1 Greenleaf on Evidence:* "These declarations, when deliberately made, under a solemn and religious sense of impending dissolution, and concerning circumstances, in respect of which the deceased was not likely to have been mistaken, are entitled to great weight, if precisely indentified, yet it is always to be recollected that the accused has not the *power of cross-examination*—a power quite as essential to the eliciting of all the truth, as the obligation of an oath can be ; and that where the witness has not a deep and strong sense of accountability to his Maker, and an enlightened conscience the passion of anger and the feelings of revenge may, as they have not unfrequently been found to do, affect the truth and accuracy of his statements, especially as the salutary and restraining fear of punishment for perjury is in such cases withdrawn. And it is further to be considered, that the particulars of the violence to which the deceased has spoken were in general likely to have occurred under circumstances of confusion and surprise, calculated to prevent their being accurately observed, and leading both to mistakes as to the identity of persons, and to the omission of facts essentially important to the completeness and truth of the narrative."

Governing yourselves exclusively by the evidence in this cause, under the law as the Court has thus laid it down, the one question for you to determine thereunder is, whether the prisoner be guilty of manslaughter or not guilty. The form of your verdict should be not guilty in manner and form as he stands indicted, but guilty of manslaughter only ; if you determine that he is guilty. Otherwise your verdict should be simply not guilty.

The jury disagreed.